IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | | |
|---|---|---|---|
| SHANNON PERCHES, | : | | |
| | : | | |
| Plaintiff, | : | | |
| | : | CASE NO. | |
| v. | : | 5:23-CV-508 (CAR) | |
| | : | | |
| SHERIDAN CONSTRUCTION | : | | |
| COMPANY, | : | | |
| | : | | |
| Defendant. | : | | |

## ORDER ON MOTION TO DISMISS

Plaintiff Shannon Perches, proceeding *pro se*, filed this employment discrimination and retaliation action against Defendant Sheridan Construction Company. Defendant Sheridan has filed a Motion to Dismiss Plaintiff's Recast Complaint or for a More Definite Statement, arguing Plaintiff is not its employee and she failed to exhaust her administrative remedies. For the reasons explained below, Defendant's Motion [Doc. 10] is **GRANTED**.

## LEGAL STANDARD

On a motion to dismiss, the Court must accept as true all well-pleaded facts in a plaintiff's complaint.[1] To avoid dismissal pursuant to Federal Rule of Civil Procedure

---

[1] *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009).

12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[2] A claim is plausible where the plaintiff alleges factual content that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[3] The plausibility standard requires that a plaintiff allege sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" that supports a plaintiff's claims.[4]

When determining the adequacy of the allegations in the complaint, the Court remains mindful that "*[p]ro se* pleadings are held to a less stringent standard than pleadings drafted by attorneys and will, therefore, be liberally construed."[5] Nevertheless, "[e]ven with *pro se* litigants, 'conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal.'"[6]

"Typically, a motion to dismiss must be converted into a motion for summary judgment when a district court considers matters outside the pleadings."[7] "However, the district court may always consider exhibits attached to the complaint on a 12(b)(6)

---

[2] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).
[3] *Id.*
[4] *Bell Atlantic Corp.*, 550 U.S. at 556.
[5] *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).
[6] *United States v. Korman*, No. 07-80998-Civ., 2008 WL 5662165, at *3 (S.D. Fla. Nov. 5, 2008) (quoting *Aldana v. Del Monte Fresh Produce, N.A.*, 416 F.3d 1242, 1246 (11th Cir. 2005)).
[7] *Basson v. Mortg. Elec. Registration Sys., Inc.*, 741 F. App'x 770, 770 (11th Cir. 2018) (citing Fed. R. Civ. P. 12(d)) (citing *Day v. Taylor*, 400 F.3d 1272, 1275–76 (11th Cir. 2005)).

motion, because exhibits are part of the pleadings."[8] "The district court may also consider documents referenced in the complaint, even if they are not physically attached, if the documents are (1) central to the complaint and (2) no party questions their authenticity."[9] Here, the Court considered Plaintiff's Recast Complaint, EEOC Charge of Discrimination, invoice, emails, and text messages, which she filed as exhibits.[10]

## BACKGROUND

Plaintiff, a 59 year old woman with "various physical issues,"[11] restores antique windows for historic buildings.[12] In 2021, Regina Sweeney, a representative of Saint Peter Claver Catholic Church ("the Church"), contacted the Historic Macon Foundation and asked "to be put in touch with the 'best window restorer' around."[13] The Historic Macon Foundation recommended Plaintiff's services to Ms. Sweeney; in turn, Ms. Sweeney "selected [Plaintiff] to be the person to complete the job."[14]

---

[8] *Basson*, 741 F. App'x at 770–71 (citing Fed. R. Civ. P. 10(c)) (citing *Thaeter v. Palm Beach Cnty. Sheriff's Off.*, 449 F.3d 1342, 1352 (11th Cir. 2006)).

[9] *Basson*, 741 F. App'x at 771 (citing *Day*, 400 F.3d at 1276).

[10] Plaintiff's Recast Complaint superseded her original Complaint, as stated in the Court's Order on Plaintiff's Motion to Proceed *In Forma Pauperis* [Doc. 4]. But the Court finds Plaintiff was not required to refile her accompanying exhibits and incorporates these exhibits into Plaintiff's Recast Complaint. [Docs. 1-2, 1-3, 3, 3-1, 3-2].

[11] At all relevant times, Plaintiff was 59 years old. She alleges she has "various physical issues," including rheumatoid arthritis. Recast Complaint [Doc. 5 at 1].

[12] Doc. 5 at 1.

[13] *Id.* It is unclear exactly when Ms. Sweeney first contacted Plaintiff about the restoration job, but Plaintiff alleges she waited two years from the time she was initially contacted until she began work on the project. Emails Exhibits [Doc. 3 at 4].

[14] Doc. 5 at 1.

It appears the Church undertook an extensive restoration project, and hired Defendant Sheridan Construction to oversee the entire project.[15] Defendant's employee, Hunter Roberson, supervised the work site at the Church.[16]

On March 6, 2023, Plaintiff began the window restoration,[17] and Plaintiff alleges she was subject to the "vitriol" and "belittling" of Hunter Roberson. Plaintiff alleges Mr. Roberson "was constantly complaining to [her] about the rate at which [she] was working, the number of hours [she] was working each day, [and] the time at which [she] showed up each day."[18] Mr. Roberson was the only Sheridan employee with whom Plaintiff interacted.[19]

Before Plaintiff started the window restoration, "[she] made it clear it would take [her] several months to complete th[e] job," but when she started, she learned there was an "accelerated timeline" of 6 weeks, meaning she would have to finish by April 27, 2023.[20] Plaintiff told both Ms. Sweeney and Mr. Roberson that the April 27th deadline was too soon.[21] Plaintiff alleges she was unable to work at the speed Mr. Roberson demanded

---

[15] Although it is unclear, the reasonable inference from Plaintiff's allegations is that the Church was undergoing a more comprehensive restoration that it hired Defendant to oversee, with Plaintiff hired to restore only the windows.

[16] Doc. 5 at 1. Defendant sometimes refers to Mr. Roberson as "Mr. Huberson," but it is clear both reference Sheridan employee Hunter Roberson.

[17] EEOC Charge of Discrimination [Doc. 1-2 at 1].

[18] Doc. 5 at 1.

[19] *Id.* at 3.

[20] *Id.* at 1.

[21] Doc. 3 at 3.

because of her age and physical ailments.[22] Sheridan policy required "'supervision' on the site whenever anyone [was] working on one of their job sites," and Sheridan did not include the cost of supervision past April 27th in their quote to the Church.[23] But "several times" Plaintiff stayed until 7:00 or 8:00 p.m. when none of Defendant's employees were around.[24] Plaintiff "work[ed] with Sheridan" for convenience's sake to ease the certification process.[25]

On March 20, 2023, Plaintiff emailed Ms. Sweeney, stating "Sheridan did not contract me to do this job. You did, Regina."[26] Plaintiff further stated, "I don't like being rushed. I don't like being told I have to work 8 hours a day. I don't like feeling pressured to show up in the morning when there are BELOW FREEZING temperatures, or to work outside in the rain."[27] When Plaintiff was told she was working too slow, she brought on two of her own "trusted workers," and had arranged to bring two more before she was fired.[28]

---

[22] Doc. 5 at 1.

[23] Doc. 3 at 3.

[24] Doc. 5 at 2.

[25] Doc. 3 at 3, 4. Apparently, Plaintiff needed a "SAMS certification" to do the restoration, which she avoided having to obtain by "work[ing] with Sheridan." *Id.*

[26] Doc. 3 at 4. It is unclear if this email was sent on March 20th or 21st, but the difference is immaterial.

[27] Doc. 3 at 5.

[28] Doc. 3 at 6; Doc. 5 at 2.

The next day, Plaintiff was fired.[29] The same day, Plaintiff emailed Ms. Sweeney about her termination stating, "I am flabbergasted that you permitted Hunter to fire me without granting me the four days to show progress that he promised me the day before. . . . You promised me two years ago that the job was mine,"[30] and "you allowed [Mr. Roberson] to do it."[31] Plaintiff alleges that when she was terminated, Defendant "contracted with a less talented restorer" to replace her.[32]

Plaintiff was paid via an invoice she left with Ms. Sweeney.[33] Plaintiff's original invoice was quoted to the Church, included the costs of some materials, and was titled with Plaintiff's name, phone number, and "Expert Vintage Window Repair."[34] Plaintiff also asked Ms. Sweeney and Mr. Roberson for money to buy materials and supplies.[35] Plaintiff "turned down" another restoration job on three houses that would have been more lucrative because she had made a commitment to the Church's job.[36] Plaintiff alleges Defendant's CEO told her she would find Plaintiff work at another job site to "recoup the financial losses [she] suffered because [she] was fired."[37]

---

[29] Doc. 5 at 2.

[30] Doc. 3 at 6.

[31] *Id.* at 6.

[32] Doc. 5 at 1.

[33] Doc. 3 at 7.

[34] Invoice [Doc. 3-1 at 1].

[35] Doc. 3 at 1, 13.

[36] Doc. 5 at 1.

[37] *Id.* at 3.

Plaintiff initially brought claims for discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e and 12203 ("Title VII") and the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 to 634 ("ADEA").[38] After screening Plaintiff's Complaint pursuant to 28 U.S.C. § 1915(e)(2) and liberally construing her allegations, the Court found Plaintiff's Complaint failed to state any claim for relief and ordered her to recast her Complaint if she wished for the action to proceed.[39] Plaintiff filed her Recast Complaint.[40] After screening, the Court dismissed Plaintiff's Title VII claims for gender discrimination and retaliation, but permitted her ADEA claims for discrimination and retaliation to proceed, found her new allegations plausibly stated a claim for discrimination and retaliation under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101 *et seq.* ("ADA"), and ordered the Recast Complaint be served on Defendant.[41] Defendant now moves to dismiss Plaintiff's Recast Complaint.

## DISCUSSION

### I.    Plaintiff Failed to Exhaust Administrative Remedies for ADA Claims

Defendant argues Plaintiff failed to exhaust her administrative remedies for her ADA claims. A plaintiff must file a charge of discrimination with the EEOC before filing

---

[38] Complaint [Doc. 1].
[39] Order to Recast Complaint [Doc. 4].
[40] Recast Complaint [Doc. 5].
[41] Order on Recast Complaint [Doc. 6].

a Title VII, ADA, or ADEA action.[42] "The purpose of the exhaustion requirement is to allow the EEOC 'the first opportunity to investigate the alleged discriminatory practices to permit it to perform its role in obtaining voluntary compliance and promoting conciliation efforts.'"[43] "[J]udicial claims are allowed if they 'amplify, clarify, or more clearly focus' the allegations in the EEOC complaint, but . . . allegations of new acts of discrimination are inappropriate."[44]

Plaintiff's EEOC Charge alleged she was discharged in retaliation for complaining about Mr. Roberson's "rude and abusive behavior," and because of her age and sex.[45] The EEOC Charge contained no allegations relating to her physical limitations, illnesses, or ability.[46] Thus, Plaintiff's allegations in her Recast Complaint relating to her physical limitations were "new acts of discrimination" that did not merely "clarify" the allegations in her EEOC Charge.[47] Therefore, Plaintiff failed to exhaust her claims based on ADA discrimination or retaliation, and they must be **DISMISSED**.

## II.    Plaintiff Was Not an Employee of Defendant Sheridan

---

[42] *See Gregory v. Ga. Dep't of Hum. Res.*, 355 F.3d 1277, 1279 (11th Cir. 2004); *Dowdell-McElhaney v. Global Payments Inc.*, No. 4:20-CV-289, 2022 WL 703600, at *2 (M.D. Ga. Mar. 8, 2022).

[43] *Ortiz v. Waste Mgmt., Inc. of Fla.*, 808 F. App'x 1010, 1014 (quoting *Gregory*, 355 F.3d at 1279).

[44] *Gregory*, 355 F.3d at 1279 (quoting *Wu v. Thomas*, 863 F.2d 1543, 1547 (11th Cir. 1989)).

[45] Doc. 1-2.

[46] *Id.*

[47] *Gregory*, 355 F.3d at 1279 (quoting *Wu*, 863 F.2d at 1547).

Plaintiff's factual allegations, accepted as true, fail to establish that Plaintiff was Defendant Sheridan's employee. "To seek relief under the ADEA, a plaintiff must be an employee."[48] "[T]hree different tests are used to determine whether a person is an independent contractor or an employee under federal law."[49] First, the common-law agency test "focuses on a 'hiring party's right to control the manner and means by which the product is accomplished.'"[50] The common-law agency test also considers a number of factors, including:

> the skill required; the source of the instrumentalities and tools; the location of the work; the duration of the relationship between the parties; whether the hiring party has the right to assign additional projects to the hired party; the extent of the hired party's discretion over when and how long to work; the method of payment; the hired party's role in hiring and paying assistants; whether the work is part of the regular business of the hiring party; whether the hiring party is in business; the provision of employee benefits; and the tax treatment of the hired party.[51]

Second, the "economic realities" test analyzes the extent to which the individual is dependent on the employer.[52] Third, the hybrid approach "look[s] at the common-law agency test, 'tempered by a consideration of the "economic realities" of the hired party's

---

[48] *Ashkenazi v. S. Broward Hosp. Dist.*, 607 F. App'x 958, 961 (11th Cir. 2015) (citing *Daughtry v. Honeywell*, 3 F.3d 1488, 1495 n.13 (11th Cir. 1993)).

[49] *Ashkenazi*, 607 F. App'x at 961.

[50] *Id.* (quoting *Daughtry*, 3 F.3d at 1495).

[51] *Id.* (quoting *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323–24 (1992)).

[52] *Id.* (citing *Daughtry*, 3 F.3d at 1495).

dependence on the hiring party.'"[53] The Eleventh Circuit has not decided which test should apply in ADEA cases.[54]

Plaintiff's allegations establish she was not Defendant's employee under any of the three tests. She was hired to complete the "tricky" task of repairing the Church's antique windows; indeed, she was recommended as "the best."[55] Defendant is a construction company—there are no allegations Defendant has its own employees who restore antique windows. In fact, Plaintiff alleges Defendant contracted new, less talented restorers when she was fired. Plaintiff worked at the Church site, and her relationship with Defendant was not ongoing; it was to last the length of the job at the Church. The make-up job Plaintiff alleges Defendant's CEO promised her never came to fruition, and Plaintiff does not allege the job would have been permanent.[56]

Plaintiff alleges she was restricted by Defendant to working at the Church when a supervisor was there, but "several times" she stayed until 7:00 or 8:00 p.m. when none of Defendant's employees were around.[57] When it was cold or raining, Plaintiff did not go to work. Plaintiff brought in her own workers.[58] There are no allegations Defendant paid,

---

[53] *Id.* (quoting *Daughtry*, 3 F.3d at 1495).

[54] *Id.* at 962.

[55] Doc. 5 at 1, 2.

[56] *Id.* at 3. Instead, the make-up job was meant to help Plaintiff "recoup the financial losses [she] suffered." *Id.*

[57] *Id.* at 2.

[58] *Id.* at 2.

or would have paid, these additional workers. Plaintiff was paid via an invoice she left with Ms. Sweeney. There are no allegations she would have received a regular paycheck; rather, Plaintiff quoted a lump sum payment for the job in an invoice.[59]

Plaintiff's allegations indicate she was highly skilled, she controlled her own work schedule, and she was able to hire her own workers for help; her relationship with Defendant was tied only to this job at the Church; and the work she was hired to do is not part of Defendant's regular business. Any restrictions Defendant had on Plaintiff's work related to its interest in the final result, not a "right to control the manner and means" by which Plaintiff completed the work.[60] Plaintiff's repeated allegation that she was, in fact, Defendant's employee is conclusory and must be disregarded.[61] Thus, Plaintiff's allegations, construed liberally and taken as true, do not "raise a right to relief above the speculative level" because they fail to support a finding she was Defendant's employee.[62] Because an individual must be an employee to state a claim under the ADEA,

---

[59] Doc. 3-1.

[60] *Daughtry*, 3 F.3d at 1495 (citation omitted); *see also Langfitt v. Fed. Marine Terminals, Inc.*, 647 F.3d 1116, 1121 (11th Cir. 2011)).

[61] *McCullough v. Finley*, 907 F.3d 1324, 1333 (11th Cir. 2018) (citing *Ashcroft*, 556 U.S. at 679) ("Conclusory allegations are not entitled to the assumption of truth.").

[62] *Speaker v. U.S. Dep't of Health & Hum. Servs. Ctrs. For Disease Control & Prevention*, 623 F.3d 1371, 1380 (11th Cir. 2010) (quoting *Bell Atl. Corp.*, 550 U.S. at 555).

Plaintiff's allegations fail to state a claim upon which relief may be granted.[63] Thus,

Plaintiff's claims for ADEA retaliation and discrimination must be **DISMISSED**.

## CONCLUSION

For the reasons explained above, Defendant's Motion to Dismiss [Doc. 10] is

**GRANTED**.[64] Plaintiff's claims against Defendant are hereby **DISMISSED**.

**SO ORDERED**, this 10th day of October, 2024.

s/ C. Ashley Royal
C. ASHLEY ROYAL, SENIOR JUDGE
UNITED STATES DISTRICT COURT

---

[63] *Daughtry*, 3 F.3d at 1495 n. 13 ("The ADEA does not provide relief for discrimination against an independent contractor.") (citations omitted); *see also Ashkenazi*, 607 F. App'x at 961 ("To seek relief under the ADEA, a plaintiff must be an employee.") (citation omitted).

[64] The Court need not address Defendant's remaining arguments because Plaintiff's claims must be dismissed for the reasons explained above.